John G. McCarthy (JM-2635)
BAINTON McCARTHY LLC
*Attorneys for Plaintiff*
English Boiler & Tube, Inc.
26 Broadway, Suite 2400
New York, New York 10004
(212) 480-3500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ENGLISH BOILER & TUBE, INC.,                :
                                                                      08 Civ. 3605 (JGK) (DFE)
              Plaintiff,                              :    ECF Case

    - against -                                       :    **INQUEST MEMORANDUM
                                                                SETTING FORTH PLAINTIFF'S**
OPTIMIRA ENERGY, INC.,                      :    **PROOF OF DAMAGES**

              Defendant.                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## Preliminary Statement

Plaintiff English Boiler & Tube, Inc. ("English Boiler") respectfully submits this Inquest Memorandum in support of its proof of damages against the defaulting defendant Optimira Energy, Inc. ("Optimira").

## Jurisdiction

This Court has personal jurisdiction over Optimira. Service of process was made upon Optimira by delivering a summons and complaint to its registered agent in New York City in compliance with Rule 4(h)(1)(b) of the Federal Rules of Civil Procedure. (Doc. No. 4.) Optimira also maintains its principal place of business in this District at 60 East 42nd Street, Suite 3405, New York, New York 10165. (Pl. Ex. 6, at 1.) Finally, Optimira has "consent[ed] to submit itself to the personal jurisdiction of the Federal and state courts located in the Borough of Manhattan in The City of New York." (Pl. Ex 6, ¶ 7.)

This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) and the holding in *Neumann v. Iovino*, 06 Civ. 11367 (DC), 2007 U.S. Dist. LEXIS 50374 (S.D.N.Y. July 11, 2007), as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. English Boiler is a Virginia corporation with its principal place of business at 2890 Seven Hills Boulevard, Richmond, Virginia 23231. (English Decl., ¶ 3.) While Optimira is a Delaware corporation with its principal place of business at 60 East 42nd Street, Suite 3405, New York, New York 10165. (Pl. Ex. 6, at 1.)

Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) because at all times material and relevant to the matter, Optimira was subject to personal jurisdiction in this district. Moreover, pursuant to the terms of the Settlement and Mutual Release Agreement at issue in counts on and two, "the exclusive venue and jurisdiction for any action or suit related to or arising out of [the] Agreement shall be in the Federal court located in the Borough of Manhattan in The City of New York." (Pl. Ex. 6, ¶ 7.)

### Procedural Background

English Boiler commenced this action on April 15, 2008 by the filing of the complaint. In its complaint, English Boiler asserted three counts; two for breach of contract and one for unjust enrichment, against the defendant Optimira. Optimira failed to answer or otherwise respond to the complaint, and on June, 27, 2008, Judge Koeltl ruled that English Boiler is entitled to a default judgment against Optimira on all three counts, and referred the matter to this Court for an inquest on damages.

Upon entry of a default judgment, the Court accepts as true all of the facts alleged in the complaint except those relating to the amount of damages. *Au Bon Pain Corp. v. Artect,*

*Inc.*, 653 F.2d 61, 65 (2d Cir. 1985); *FTC v. 1263523 Ont., Inc.*, 205 F. Supp. 2d 205, 208 (S.D.N.Y. 2002). For the purposes of calculating the damage award however, English Boiler will briefly outline the underlying facts which give rise to its breach of contract and unjust enrichment claims.

## Statement of Facts

The contract at issue in the first two counts, the Settlement and Mutual Release Agreement (the "Release Agreement"), was executed on October 1, 2006. (English Decl., ¶ 39; Pl. Ex. 6.), The Release Agreement was made necessary as a result of Optimira's breach of a previous contract, a purchase contract executed on June 1, 2004 (the "Purchase Contract"). (English Decl., ¶ 4; Pl. Ex. 1.)

The Purchase Contract was executed by English Boiler and Optimira, and governed the design, manufacture and installation of boiler systems at plant facilities located in Pittsburgh, Pennsylvania owned by Rohm and Hass Company ("Rohm"). (Pl. Ex. 1, at 1.) Optimira had contracted to build boiler houses at Rohm's plants. Id. (Pl. Ex. 1, at 1.) Then, because English Boiler had expertise in boiler systems, Optimira approached English Boiler to do the actual design, manufacture and installation of the boiler systems. (English Decl., ¶ 7; Pl. Ex. 1, at 1.)

The total price for the two boiler systems was to be $1,507,640. (Pl. Ex. 1, at 2.) While English Boiler was manufacturing the boiler systems, three change orders were submitted and agreed to in writing. (English Decl., ¶¶ 18-19, 21; Pl. Ex. 2.) The additional charges for the change orders totaled $18,000. (English Decl., ¶ 25; Pl. Ex. 2.) Optimira also agreed to pay English Boiler and additional $38,400 for startup and training following installation of the boiler systems at Rohm's plants. (English Decl., ¶ 11; Pl. Ex. 1, at 19.) The total amount incurred by

Optimira, for the Purchase Contract, the Change Orders and the startup and training costs, was $1,564,040. (English Decl., ¶ 29; Pl. Ex. 2.)

Optimira made the initial installment payments on the Purchase Contract although each payment was late. In or around June 2005, English Boiler installed the boiler systems and trained the necessary Rohm personnel. (English Decl., ¶ 28.) After English Boiler installed the boilers and finished training the boiler operators at the Rohm plants, Optimira failed to pay the outstanding balance of $189,164. (English Decl., ¶ 31.)

Optimira claimed they would not make the final payments because there were back charges against the Purchase Contract. (English Decl., ¶ 32.) However, Optimira did not provide English Boiler with proof supporting the alleged back charges. (English Decl., ¶ 35.) In fact, Optimira admitted it was cash poor at the time as a result of a recent corporate acquisition. (English Decl., ¶ 36.)

In order to resolve the debt, English Boiler entered into the Release Agreement with Optimira. (English Decl., ¶ 39; Pl. Ex. 6.) In exchange for a release of all claims arising from the Purchase Contract, specifically the $189,164, Optimira agreed to pay English Boiler $150,000 in four installments. (Pl. Ex. 6, ¶ 4.) Essentially, English Boiler "wrote off" the $39,164 difference, intending to collect a majority of the money it was due without judicial intervention. (English Decl., ¶ 40.)

Upon execution of the Release Agreement, Optimira paid the first installment of $5,000. (English Decl., ¶ 42.) One year later, on October 1, 2007, Optimira was to pay English Boiler anther $45,000. (Pl. Ex. 6, ¶ 4.) Optimira has not made that payment and therefore breached the Release Agreement. (English Decl., ¶ 44.) Optimira also owes English Boiler an additional $100,000 pursuant to the Release Agreement. (Pl. Ex. 6, ¶ 4.)

4

Optimira has made no payments on the $150,000 Release Agreement except the initial $5,000 due at the execution. (English Decl., ¶¶ 42-48.) English Boiler has been trying to collect the money Optimira owes it since June 2005. (English Decl., ¶ 49.) As a consequence, English Boiler has been damaged not only by Optimira's failure to make payments under the Release Agreement, but also by its failure to make the original payments under the Purchase Contract. (English Decl., ¶ 50.)

### Argument

Optimira's failure to pay the second installment of the Release Agreement, gives rise to English Boiler's first breach of contract claim.[1] Despite Optimira's contractual obligation, it has not made payment and $45,000 has been due and owing to English Boiler since October 1, 2007. English Boiler's second breach of contract claim arises from its attempts to recover the remaining $100,000. Alternatively, Optimira received the benefit of a release (worth at least $150,000) for which English Boiler should be compensated in equity and good conscience in an amount more than the $5,000 it has received to date.

### I. DAMAGES FOR COUNTS I & II: BREACH OF CONTRACT

On the first cause of action, Optimira owes English Boiler $45,000 plus $3,850.27 in prejudgment interest through September 12, 2008. On the second cause of action, Optimira owes English Boiler $100,000 plus $3,698.63 in prejudgment interest through September 12, 2008.

Damages for breach of contract are intended to return the parties to the point at which the breach arose and to place the non-breaching party in as good a position as it would

---

[1] In the event that the Court does not enter judgment before October 1, 2008, English Boiler reserves the right to supplement its submission to include the third installment of $50,000, which will be due and owing on October 1, 2008, within its first claim for breach of contract.

have been had the contract been performed. *See Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 2008 NY Slip Op 1418, 5 (2008); *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs.*, 91 N.Y.2d 256, 262, 692 N.E.2d 551, 669 N.Y.S.2d 520 (1998). In order to make plaintiff's whole, New York courts have held that damage calculations are based on the accrual date of plaintiff's cause of action, and prejudgment interest is to be computed from that date as well. *Spodek v. Park Prop. Dev. Assocs.*, 96 N.Y.2d 577, 581, 759 N.E.2d 760, 733 N.Y.S.2d 674 (2001).

Here, Optimira breached the Release Agreement when it failed to pay English Boiler $45,000, a sum certain, on October 1, 2007. (Pl. Ex. 6, ¶ 4.) In addition to outright breaching the Release Agreement as to the second installment, Optimira has demonstrated intent not to fulfill its future obligations when they come due. (English Decl., ¶¶ 43-51; Pl. Exs. 7-8.)

The Release Agreement is silent as to interest rates to be applied. (Pl. Ex. 6.) The Release Agreement has a choice of law provision that designates New York law as governing the Release Agreement. (Pl. Ex. 6, ¶ 7.) Under New York law, in the absence of a contractual provision, prejudgment interest is calculated at the statutory interest rate. *European American Bank v. Peddlers Pond Holding Corp.*, 185 A.D.2d 805, 586 N.Y.S.2d 637 (2d Dep't 1992). Pursuant to CPLR 5004, prejudgment interest shall be at the rate of nine percent per annum.

The chart below calculates prejudgment interest on $45,000 from October 1, 2007 through September 12, 2008, the scheduled hearing date on this inquest.

| Payment Day | Aging (Days) 10/01/07 - 9/12/08 | Total Principal | Daily Interest | Prejudgment Interest |
|---|---|---|---|---|
| 10/1/2007 | 347 | $45,000.00 | $11.10 | $3,850.27 |
| | | | Principal | $45,000.00 |
| | | | TOTAL | $48,850.27 |

The next chart calculates prejudgment interest on $100,000 from April 15, 2008, the date this action was commenced, through September 12, 2008, the scheduled hearing date on this inquest.

| Payment Day | Aging (Days) 04/15/08 - 09/15/08 | Total Principal | Daily Interest | Prejudgment Interest |
|---|---|---|---|---|
| 4/15/2008 | 150 | $100,000.00 | $24.66 | $3,698.63 |
| | | | Principal | $100,000.00 |
| | | | | $103,698.63 |

## II.  DAMAGES FOR COUNTS III: UNJUST ENRICHMENT

Under New York law, a plaintiff may submit a claim for breach of contract as well as an alternative claim for unjust enrichment, and an election need not be made as to which theory the plaintiff submits to the court. *Joseph Sternberg, Inc. v. Walber 36th Street Assoc.*, 187 A.D.2d 225, 228, 594 N.Y.S.2d 144 (1st Dep't 1993). Optimira has also been unjustly enriched by English Boiler's release of its claims to the original $189,164. The value of that release is at least $150,000, of which only $5,000 has been paid. (English Decl., ¶¶ 42-44, 51.) As a result, English Boiler is owed $145,000 on the third count of its complaint plus prejudgment interest.

Optimira received an unjust benefit when English Boiler released it from its obligations arising out of the Purchase Contract. Optimira should not be permitted to retain that benefit. To state a claim for unjust enrichment, a plaintiff must prove that: (1) defendant benefited from the transaction; (2) the benefit was incurred at plaintiff's expense; and (3) that equity and good conscience require restitution. *Mazzaro de Abreu v. Bank of America Corp*, 525 F. Supp. 2d 381, 397 (S.D.N.Y. 2007).

Here, Optimira owed English Boiler $189,164 pursuant to the Purchase Contract in June 2005. In an attempt to recover some of the money it was due, English Boiler executed the Release Agreement at a $39,164 discount to Optimira with the understanding that Optimira

7

would not default on its obligation again. (English Decl., ¶ 40.) The Release Agreement benefited Optimira at the expense of English Boiler. English Boiler was deprived of $189,164 in June 2005. Equity and good conscience dictate that Optimira should not be permitted to retain the benefits of the release without paying for it. English Boiler is therefore alternatively entitled to damages in the amount of $145,000 on its unjust enrichment claim.

## Conclusion

For the foregoing reasons, English Boiler respectfully requests that the Court award it:

(a) on its first count, $45,000 plus prejudgment interest of $3,850.27 through September 12, 2008, and prejudgment interest at the rate of $11.10 per day thereafter until judgment is made, and on its second count, $100,000 plus prejudgment interest of $3,698.63 from April 15, 2008 through September 12, 2008 and prejudgment interest at the rate of $24.66 per day thereafter until judgment is made; or

(b) In the alternative, on its third count, $145,000 plus prejudgment interest of $5,363.01 from April 15, 2008 through September 12, 2008 and prejudgment interest at the rate of $35.75 per day thereafter until judgment is made.

Dated: New York, New York
August 1, 2008

BAINTON MCCARTHY LLC

By: _____
John G. McCarthy (JM-2635)
26 Broadway, Suite 2400
New York, New York 10004-1840
(212) 480-3500
*Attorneys for Plaintiff*
*English Boiler & Tube, Inc.*

## CERTIFICATE OF SERVICE

I, Michael T. Roussel, hereby certify that on August 1, 2008, I caused a true and correct copy of the foregoing *Inquest Memorandum Setting Forth Plaintiff's Proof of Damages* to be served upon the defendant, via first-class mail, addressed as follows:

>Optimira Energy, Inc.
>60 East 42nd Street, Suite 3405
>New York, New York 10165.

Dated: New York, New York
      August 1, 2008

_____
Michael T. Roussel